571 S.E.2d 142

**STATE of West Virginia ex rel. AARON M. and Anthony H., Petitioners,**

v.

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RE-SOURCES, Respondent.**

No. 28468.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 9, 2001.

Decided May 3, 2001.

Cathryn S. Nogay, Weirton, West Virginia, Attorney for Petitioners.

Darrel V. McGraw, Jr., Attorney General, Joanna Bowles, Assistant Attorney General, Charleston, West Virginia, Attorneys for Respondent.

Per Curiam:

This case is before this Court upon a petition for a writ of mandamus filed by the petitioners, Aaron M.[1] and Anthony H., against the respondent, the West Virginia Department of Health and Human Resources (hereinafter "DHHR"). The petitioners seek an order to compel the DHHR to pay for the therapeutic services of Denise Flint, a specialist in attachment disorders. We issued a rule to show cause, and now, for the reasons set forth below, grant the writ as moulded.

I.

On September 15, 1994, the Circuit Court of Hancock County determined that Aaron M., born on July 10, 1990, and Anthony H., born on January 15, 1992, were abused and neglected children. Subsequently, the court terminated the parental rights of their mother, Retha M., and granted permanent custody of the children to their maternal grand-

---

1. We follow our past practice in cases involving sensitive facts and do not use the last names of the parties. *In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

mother, Monica C. The court further ordered the DHHR to provide medical care, treatment, and services for the physical, emotional, and psychological needs of the children.

Since 1995, the children's placement has been reviewed by the circuit court every six months. Because of the abuse and neglect suffered by the children while in their mother's care, they have received therapy from Wellspring Family Services (hereinafter "Wellspring"). These services were paid through the children's Medicaid card. In 1998, the children's therapist at Wellspring advised the children's Multidisciplinary Treatment Team (hereinafter "MTT") that she did not believe that she had sufficient expertise to provide appropriate therapy for the children. Anthony had been hospitalized in November 1997, at a psychiatric facility for children in St. Clairsville, Ohio, after starting a fire in his grandmother's home. He was diagnosed with attention deficit hyperactivity disorder, fetal alcohol syndrome, depression, sexual abuse as a child, pyromania, and attachment disorder. Aaron was demonstrating similar, but less severe, problems. Given the therapist's concern, the MTT determined that Anthony should be evaluated by Denise Flint, a child therapist with Coddington & Associates, who was known to have expertise in attachment disorders.

In a report dated September 10, 1999, Ms. Flint advised that Anthony had serious problems and that she agreed with the prior diagnoses of reactive attachment disorder, attention deficit hyperactivity disorder, and fetal alcohol syndrome. Ms. Flint recommended that Anthony work with her for two hours, biweekly, to resolve his past life trauma, grief, and loss. The MTT, which included at least two representatives of the DHHR, agreed with Ms. Flint's recommendation and a hearing was scheduled with the circuit court for approval.

At a hearing held on September 17, 1999, the circuit court reviewed Ms. Flint's report and the recommendation of the MTT. Thereafter, the circuit court ordered that Anthony receive therapy from Ms. Flint, biweekly, for two hours per session, at the rate of $75.00 per hour, and that the DHHR provide prompt and regular payments for her services.

In February 2000, the guardian ad litem for the children was informed by Ms. Flint's office that there was an outstanding bill for services rendered to Anthony in the amount of $2,522.50, and that they would have to cease treating him until the bill was paid. The guardian ad litem tried to resolve the matter but ultimately filed a motion for contempt against the DHHR on March 6, 2000. Prior to a hearing on the motion, the DHHR paid the bill and promised to provide prompt payment in the future. As a result, the motion for contempt was withdrawn.

A court review was held on March 24, 2000, and the guardian ad litem presented to the circuit court a report from Ms. Flint regarding Aaron. Ms. Flint diagnosed Aaron with post-traumatic stress disorder, attention deficit disorder, and reactive attachment disorder. The MTT recommended that Ms. Flint provide treatment to Aaron at the DHHR's expense. The court approved the therapy for Aaron on a biweekly basis, in two-hour sessions, at the rate of $90.00 per hour.

In August 2000, the guardian ad litem was again notified by Ms. Flint's office that Anthony's account was delinquent, this time in the amount of $1,530.00. The guardian ad litem contacted the DHHR regarding the bill and was informed that the DHHR would only pay Ms. Flint's bills at the Medicaid rate. Thereafter, the guardian ad litem filed this petition for a writ of mandamus with this Court on behalf of the petitioners.

## II.

■ We begin our analysis of this case by noting that a "[a] writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969). As set forth above, the petitioners request that this Court grant a writ of mandamus and order

the DHHR to pay for the therapeutic services of Ms. Flint at the rates approved by the circuit court. However, the DHHR contends that Ms. Flint is not entitled to reimbursement in excess of the Medicaid rate for services she provided to Aaron and Anthony. We agree.

Documents submitted in this case indicate that Ms. Flint works out of the offices of R. Dean Coddington, M.D. & Associates, Inc. Dr. Coddington has executed an agreement with the DHHR to accept Medicaid rates for his services and thus, is an approved Medicaid provider. Dr. Coddington's Medicaid provider agreement states that: "The provider shall provide for the compliance of any subcontractors with applicable federal requirements and assurances."

 With respect to payment for services rendered by a Medicaid provider, 42 C.F.R. § 447.15 (1985) states, in pertinent part:

A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amount paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual.

In accordance with this requirement, W.Va. Code § 16–29D–4 (1991) provides, in pertinent part:

(a) Except in instances involving the delivery of health care services immediately needed to resolve an imminent life-threatening medical or surgical emergency, the agreement by a health care provider to deliver services to a beneficiary of any department or division of the state which participates in a plan or plans developed under section three [§ 16–29D–3] of this article shall be considered to also include an agreement by that health care provider:

\* \* \*

(2) To accept as payment in full for the delivery of such services the amount specified in plan or plans or as determined by the plan or plans. In such instances, the health care provider shall bill the division

or department, or such other person specified in the plan or plans, directly for the services. The health care provider shall not bill the beneficiary or any other person on behalf of the beneficiary and, except for deductibles or other payments specified in the applicable plan or plans, the beneficiary shall not be personally liable for any of the charges, including any balance claimed by the provider to be owed as being the difference between that provider's charge or charges and the amount payable by the applicable department or divisions.

Thus, a Medicaid provider cannot bill another source for the difference between the allowable Medicaid rate and the provider's customary rate.

Although the parties disagree as to whether Ms. Flint is an employee of Coddington & Associates or an independent contractor, it is clear that Dr. Coddington's Medicaid provider agreement along with the applicable federal regulation and state statute cited above prohibit Ms. Flint from being paid for her services in excess of the Medicaid rate. Thus, this Court finds that the circuit court erred by ordering the DHHR to pay Ms. Flint for services at the rate of $75.00 per hour for Anthony and $90.00 per hour for Aaron.

Given the facts in this case, it is clear that the petitioners required the services of Ms. Flint. Moreover, the DHHR is required to provide such supportive services in abuse and neglect proceedings. W.Va.Code § 49–6–1 (1998). However, because Ms. Flint was working out of the offices of Dr. Coddington, a Medicaid provider, she is not entitled to payment for her services in excess of the Medicaid rate. Therefore, we grant the requested writ of mandamus, but direct the DHHR to pay Ms. Flint's invoices for therapeutic services rendered to the petitioners at the Medicaid rate applicable at the time the services were or are hereafter rendered.[2]

Writ granted as moulded.

---

2. We note that the DHHR paid some of Ms. Flint's invoices in excess of the Medicaid rate

applicable at the time the services were rendered. In satisfying Ms. Flint's unpaid invoices, the DHHR is entitled to a credit for those overpayments.